We have Mr. Fanning for the appellant. We have Mr. Majors for the appellee. Mr. Fanning. May it please the court, Your Honor. Counsel. For the record, my name is Attorney Edward F. Fanning representing Defendant Brian Angel in his lawsuit. These two arguments that we would present to the court today first deals with what we believe is the pre-sentence investigative report and the court's study to strike it first starting off that there was a conflict of interest in so much as the relationship with the probation officer who was drafting it and that her relationship being the spouse of a state's attorney who was the prosecuting attorney in this matter by that relationship inherently creates a conflict of interest that could result in a biased and well-added report. The second aspect of that argument also deals with what we believe is evidence of that bias is that in that pre-sentence investigative report she starts adding additional unsubstantiated allegations in that report that become of such a prejudicial nature and character. I thought they were stricken by the trial court and not considered. They finally were stricken. Doesn't that resolve that question then or issue? If the court doesn't take that into its consideration, and he did strike those, even the conclusions that he had as far as recommendations when pressed with that issue. Is there anything in the report that you objected to that was not stricken? No, Your Honor. I think that the report, the items that were not stricken were accurate as far as its history, its family history, and my client concedes that. Counsel, this seems to put you in a kind of a tough situation here because aren't you then arguing that the trial court said it didn't consider the things that it struck, but it really did? Isn't that really your argument? It is to a point, but what's even more disturbing is that the court truly was able to segregate himself from those aspects and still took the biased position that he has. He's not prejudiced by that report. He's biased by his position. Then he's biased by his position in the nature of the offense itself, and that leads into the second argument. In what way? In what way was he biased? If you look at his reports during the sentencing hearing, you can tell by his comments that immediately he's not looking to consider all the factors under the statute which he's required to when considering the sentence to be imposed. He immediately starts talking about the mere nature of the offense itself. Is there something wrong with that? Is there a case that says you're not supposed to do that? I think there is. If you look at Billyard, it says that— It says you cannot talk about the nature of the offense? You can talk about the nature of the offense, but that can't be your sole decision aspect of imposing it just because you yourself find the offense to be offensive by itself that you want to impose the maximum sentence. I think the court would agree with the statutory guidelines of what the sentence should be and believe that it should have a more harsher punishment. So he's going to lean towards the maximum sentence as he did in this particular case. In fact, because the type of offense that the defendant pled guilty to was eligible for a 50-50 or a day-for-day credit in incarceration, he expresses his displeasure in that, which further ingrains his bias of the offense itself. Well, all he did was—the prosecutor mentioned that it's 85 percent, and he said 85 percent. That's it. It's 75 percent. I think the judge said, well, the one thing is this is a 75 percent case, and he corrected him and said, you know, I think he's eligible for day-for-day credit, and then the judge didn't take issue as far as inaccuracy but found it to be hard to believe that that was a day-for-day offense. He said, I find it hard to believe this is a day-for-day. I think he did. He questions him. This is still day-for-day? Or this is still day-for-day? Yeah. Depends on how you emphasize it, isn't it? That's correct. Okay. The record doesn't emphasize it. I mean, although I was there, I took it as the— If it was the way you said it, then there would be a question mark at the end. But there's a period. It's a statement, not a question. I mean, we have to look at the record, right? Correct. Nothing the record says. And a court reporter with any experience, if the judge said, this is day-for-day, you would have put a question mark, right? I just hope my quote is—and I don't have a record. I just hope my quote, my brief, is not a typo. And then I have to look at this. Anyway, you were there, and you're saying the court did emphasize that the court was surprised it was still day-for-day in the sense that your thought was the court thought it should have been an 85 percenter. Is that what you're telling us? You also said a minute ago that he expressed concern about the maximum being, what was it, seven years? Is that— Correct. Is that true? And what did he say with regard to the maximum? Well, after imposing this sentence, he states, I don't think it is long enough. But that is what the statute limits me to. What was the state's recommendation, five years? Five years. And, I mean, we acknowledge that it was not a redistribution. It was—the court did have its latitude as to what sentence it wanted to impose. But the problem that we have is we just believe that the court did not consider all the relevant factors, especially the factor of probation, might be a viable alternative. Immediately, the courts go to the maximum sentence. And that's the way we believe it took. We have recommendations from the sex offender evaluators that did believe that the client was eligible for a non-incarcerated program, such as doing the evaluation and what she did and complying with the counseling and a period of probation, and that would not be incarcerated. And so if the two-sentence investigative report was able to strike those and not use those factors in its decision, it's even more disturbing that then we would come to this biased decision, which we believe is biased by the nature. I mean, the court even talks about the—in its factors, you're saying—says the aggravating—the aggravating factor is the offense itself. And that—so—and he goes on. That in itself is an offense that is offensive in society. So, again, here he is. The legislatures have already taken that classification of the offense and said, this is what the range of sentence for individuals who have committed these offenses should be. It is the range. It doesn't say it has a minimum of seven years. It says this is the maximum. And it also allows that those offenses be probationable. And the sentencing guidelines, the court should consider those factors of whether or not probation is appropriate and also should consider the wide range of the sentencing aspect that is allowed or afforded to him. He even goes on that he—his language is quoted, what has tainted the court's judgment. So it almost admits that it's tainted. This is a 37-year-old with a 13-year-old girl. Now, I am bound by the legislative determination. I can't give him eight years. I can't give him ten years. I can only give him seven years. And he goes on to say that it is heinous. And I say heinous in my opinion, and that's really what it is. In effect, he says, but I use those—that word heinous. It needs to go in the appeal, heinous. Very offensive. It's aggravating. And clearly he says, when I said seven years is not enough, that's my opinion. And so because of that biasness as evidence, and we believe it's clearly evidenced by this language that is clearly inflammatory, that quote again, the court admits its judgment is tainted, and why did the court say that? I mean, what was the follow-up? What has tainted the court's judgment is what? What has tainted the court's judgment is a 37-year-old with a 13-year-old girl. And your argument is, well, that's what the statute—that's what's covered in this statute as far as the sexual conduct, right? I think it's an aggravating factor because that's what this characterization, the definition of the type of offense, that's what these individuals are covered under. Oh, that's what I was trying to ask. So, but he doesn't say this is just an aggravating factor that I consider all of these factors. He said it's tainted. He believes the mere offense itself taints his judgment in this matter. And that's why it wasn't a situation that he used this one aspect as an aggravating factor, and it might be a predominantly influential aggravating factor that the court should consider. It's that one factor that cuts out all consideration by the court of anything else, of mitigation, whether it's the defendant's history, his criminal history, what he's been doing in society, how this came about, whether he should consider those other factors or not. Because he comes to that conclusion about this type of offense, he's already concluded. He's shutting out all other options that he should have considered given the sentencing guidelines. And that's why we believe that when the court takes such a biased position, it's prejudicial to the defendant in getting a fair sentencing and consideration of all factors. And that's why we believe that we're asking this court to, not only because of the biased nature of the conflict of interest of the pre-sentence investigative report, but the biased nature of the court in the position of the sentence. And that's why we would ask the court to remand the matter so that either both a pre-sentence investigative report can be done, that it not taint the court, and that the matter be set back for reconsideration. And that a new judge be assigned that does not necessarily have a judgment that is already predisposed on these types of offenses as this particular judge did have. Most of the language that you quoted came from the motion to reconsider, right? I think that was in the original sentencing. Well, in the motion to reconsider is when he says the aggravating factor here is the offense itself. We have a 37-year-old man having sex with a 13-year-old girl. That in and of itself is an offense that is offensive in society. That's not what he said in the sentencing. That's what he said in the motion to reconsider. Correct. Right? And I think he's explaining himself trying to give what he's imposing in that sentence. Okay, so then it would be just as important that he said, I'm entitled to have a second look at my opinion, and I say this with all compassion toward Brian Angel. I have known Brian a long time, and I like Brian. Those are irrelevant factors, but just so you know, there was no aggravation presented at the sentencing hearing. You are correct. There are mitigating factors that I did notice, and it's good that except one is always admitting error. And Brian did have said that he didn't want people to go through the trauma of a trial. I respect that. I think he said what he meant and meant what he said. So he said those things too, right? That's correct, he did. And then he talked about how Brian had talked about how he had a compulsion, and the purpose of the seven-year sentence was to give him adequate time with psychiatrists, psychologists, and doctors to maybe address that compulsion. In fact, he said, my sentence was out of compassion, not just for the defendant, but to send a message to the rest of the world that we don't accept this behavior. This is an opportunity for Brian to obtain the assistance that he needs in a concentrated, focused situation where he doesn't have distractions. He doesn't have any 13-year-old girls or anybody else who's going to distract him. He can get the help that is provided for free from DOC by psychiatrists, psychologists, and doctors. He acknowledges at some point that it is intended to punish and to protect, but he also says the rehabilitative function of a sentence is there for the taking if the defendant is willing to take it. I just hope that he's rehabilitating. I hope he can do this. That's up to the doctors. That's up to Brian. He said all those things too, didn't he? He did. And he acknowledged that he did consider all the factors in aggravation and mediation. And he says that in the motion to reconsider that he has considered all of those factors. You just don't like that he used harsh language. Well, I don't like the harsh language because I think it is evidence to show that he's already predisposed about that, and it's evidenced by the language that he utilized both in the sentencing when he talks about episemes. I don't think it's long enough, but that's what the statute leads me to. The talk about the rehabilitation, the evidence from the evaluation shows that he can, that she believes, the evaluator believes, that he can be rehabilitated without incarceration. Even if there is an incarceration period, there's no mandatory seven-year program in the Department of Corrections. They need to have went through a successful rehabilitative program with a much lesser sentence and completed that in the Department of Corrections. So, I mean, the seven years, the imposition of the seven years is not necessarily indicative to allow him to be rehabilitated. So if he did six years or five years or four years, a lesser sentence, they would not have been able to afford him to a program that would allow him to be rehabilitated. So to be rehabilitated seven years is not a mandatory sentence. And that's where we think, given the evidence that the court says that he considered those factors, but his expressions and his words to me read differently as far as that he did not truly consider those factors in his imposition of sentence. And they were dominated by the overall aspect of the nature of the offense itself, that he went straight to the maximum. Had he not, had he had any imposition ability to go beyond the seven years, I believe that he would have done that. I think he would have went in ten or even longer. And he even indicates that in the motion to reconsider that he wasn't afforded that opportunity. And he's limited by that statute. But he should be also limited by the statute to give the full consideration to the full range. And he doesn't say otherwise. And that's why, again, we would ask that he, Your Honors, remand this for reconsideration, a resentencing, and a different judge so that absolute biases can complete a full and adequate consideration of all the factors. Thank you, Mr. Fanning. You'll have an opportunity on rebuttal. Mr. Majors. Mr. Majors, before you begin, could I ask a question for clarification? The PSI report is in the record in this case, correct? It is. Isn't it? It's unknown to me. You didn't check? I have a record that I used to prepare the state's brief, and I argued that it wasn't part of the record. I never got into motion to supplement the record. My best knowledge is it was sealed at the trial. Can I ask a question? Can I follow up with a question? Sure. Okay. That would seem to be a fairly common practice with pre-sentence reports. Wouldn't your office, if the appellant didn't file a motion asking that it be unsealed, wouldn't your office then normally file one? Not that I'm aware of, Your Honor. Well, I want to be clear on this, just where the PSI is, because I printed off a copy off my computer, and I don't think I was accessing Green County's e-violence system in order to do that. To me, it appeared that it was in the record here, just filed under seal. Isn't that what usually happens in these cases? Not to my knowledge, Your Honor. Okay. Not to my knowledge. Well, what is your understanding, then, when a PSI is part of the record, how do you get to it? How do you access the PSI? I never have. I'm not trying to be obstructionist or disrespectful at all. Well, there's an assertion that the PSI isn't in the record, and that's the point of clarification I want to start with. Okay. I get the record from the defendant after he prepares his brief, and it wasn't in that record. I kept it there if anybody wants to look at it. There was no pre-sentence investigation report in that record. And this Court has admonished me countless times, hey, if it isn't in the record, it doesn't exist. Exactly, and that's true. But here I want to just clarify, just because you didn't get it, are you asserting that it's not in the record? Because I'm trying to figure out how it is that I was able to do it on my computer. I was able to pull it up. You gentlemen know the rules better than I do, and you have the experience with the rules, I know. You know, I often think, well, what is the etiquette in here? And no one's ever set me a set of rules or anything after I've performed my behavior based on experience with this Court. I honestly can tell you, under oath here, anywhere you want, I have never, ever unsealed anything from the trial board. I'm only, well, 90 percent of the time I'm responding to them. They provide the record. If he sent me the pre-sentence investigation report, I didn't get it. Well, could it be that he didn't file a motion to unseal it, and therefore it remains sealed? You're saying you just looked at the paper record. What did you look at? Was there a paper record? I have it right there, transcripts of the sentencing hearing, and then there's, as I recall, the motion to reconsider in two parts. That's what I have. Okay. I just want to make sure that I understand what the record consists of in this case, and I'm not entirely clear right now. I personally would be delighted, and I think everybody in my office would be delighted if the Court said from here on out, when you have a sealed document at the trial level, it is so-and-so's responsibility to get it unsealed. I mean, we'll follow the rules if we know what they are. Well, are you saying you don't get the record from electronic filing? You're still working on the hard record. No, I don't get the same one. Wait a minute. You've got a hard copy. You don't go on the computer and get the record? Or did you go on to it and then print it off? Yes, I do. But if you looked on the computer, wouldn't it show the PSI filed under seal? Yes. Yes, yes. Is that where we're going? Yes, yes. It says it's filed under seal, right? In this court, in the record. The record contains it. I thought it said circuit court. If I'm wrong and it is this court, I don't know how to unseal it. I've never been trained to do it. I've never done it. I've never had occasion to do it. Well, then that may be the case, but that may not then be an accurate statement in your brief, that the PSI isn't in the record. Do you see what I'm asking? Well, apparently I lost argument once, so I'm going to argue again. That's not losing or winning an argument here. It's just trying to get clarification on this. I think everybody at SAP would be delighted if this court said, thou shalt handle these cases the following way. I don't understand. We'll check our rules, but I think they do provide for the opening of a sealed document upon motion. I think that's clear. Maybe not. If it isn't, it needs to be made clear. I could be mistaken, but I can swear it. It said sealed by the circuit court. I know there's some response. Yeah, it's sealed by the circuit court, but it's up on appeal now. I don't know how things work here. If it's sealed by the circuit court, my assumption is it's down there, and it's sealed because it's 12 years old, I don't know, 13 years old. You don't think the appellate court looks at the sealed records from the circuit court? No, no. I'm telling you the truth as best I know it. I'm not trying to be disrespectful. All right, all right. If you want to instruct staff to do something, I'm sure they'll do it. I'll do it. I've never seen this. That's all I know. If argument one has no basis and has no merit, then it has no merit. So why don't you go on to your next one? Okay. The next argument we made is they say that there's conflict of interest over and over and over. There is a conflict. There isn't. There is. There isn't. There is. There isn't. Okay. Well, there's no authority side, and there's no evidence. I think two or three times the court said, well, what about your evidence? We don't have any evidence. What's your authority? We don't have any authority. It just sounds suspicious. That's the argument. It's insinuating that there's something not right about it. Is that right? Yeah. I mean, they could have called a defendant as a witness about this pre-sentence or conflict. They could have called the victim as a witness. They could have called their three probation officers, including the victim's wife, about the conflict. They could have called the Sarah Brown police, the licensed political social worker. They didn't call any of those witnesses. They didn't print any evidence. They had no authority. And then going to argument three, I mean, what you have here is a couple of times for records of sexual intercourse, but what he's charged with is touching with his fingers. So he escapes class X. He's got, I think, four charges. He escapes three of them are thrown out, and he thinks he's going to get probation, I guess. And he's only sentenced to 70 years' jail time with one offense. And the judge was concerned about the age of the victim. Not only does the record say sexual intercourse, but it also says she was just a few days more than, excuse me, a few days into her 13th year. Well, that comes under, and this court will know, that comes under an ancient extent of the offense. The court considers an ancient extent of each element of the offense. So it makes a difference whether the victim is just turned 13 or she's 17. That's all that is. He's commenting on her age. So we don't see that as an abuse of discretion. I'll try to answer the court's question. Well, defense counsel argued that the trial court went straight to the maximum because the trial court felt like the maximum wasn't even enough. My view of that argument is defense counsel is essentially saying the court didn't even consider three years, six years, anything below seven. Therefore, when the court says that he's tainted by the nature of this offense, that shows that they did have a bias and didn't get a fair sentencing hearing. What would be the state's response to that? Again, the nature of the extent of it. You know, I'll take a few words of a sentencing judge out of context and say, well, they have to have an extension hearing. He's talking about the nature and extent of the offense. And if Munroe serves, he, now, you've got your record. I don't have it, but if Munroe serves, he was upset most by, and again, I don't have a present investigation report, by a letter either sent to the court or put in the present investigation report, said, I knew it was wrong. I had a girlfriend who was pregnant, but I did it anyway. That's what the problem is. Well, I probably didn't articulate my question right, but the argument from counsel was that the trial court went straight to the maximum. Do you disagree with that? Yeah. I mean, I think it says you have to look at the total lethality of the circumstances. I mean, this guy goes from sexual intercourse to fondling. He gets three charges knocked out, and they could have been not only maxed out but consecutive. And then he asked for probation, which I think is ridiculous, and then he asked for two years. I think in the motion to reconsider sentencing, he asked for two years. No, that's not even in the statute. It's a three-minute one. Should we read any significance into the fact that the state requested five years, but the court said seven years, and that's not even enough? The judges can do that. You all know that. They don't have to know about the state's recommendation. It's an open plea. It's a wide open plea. Hey, I don't want to be charged with intercourse, and I don't want these other charges. I'll plead this one count. It's open. It's wide open. Okay. Well, I don't disagree with any of that, except to the extent that it's argued that the court said it was tainted. The court said the nature of this particular offense meant that it disagreed, that seven years was enough. Moreover, it sounds like, although subject to how you interpret the cold record, that the court said he was surprised and maybe not happy with the fact that the defendant was entitled to 50-50 good time. Given all that, it tends to, I think, corroborate defense counsel's argument that this trial court, because of this sex offense, didn't consider anything except the maximum sentence. But you apparently disagree with that, which is fine. You can move on with your argument. Well, I did. I mean, I'm finished. Oh, okay. Would it have been inappropriate for the trial judge to walk into the courtroom that day, having had the PSI in hand, having known all of the particulars in advance of the sentencing hearing that he knew, to have in mind what he was going to likely do in terms of sentence? Why not? That's my question. He knows the person's comment. He knows his admit. He knows he says he was a kid. He's got the free sentence before the trial. The guy's standing in front of him. He knows what the deal was. It's a wide open. It's a wide open sentence on one count out of four. It's toddling and smooth and pitiful. He knows he's avoiding Class X and consecutive sentences. I would. I would. You guys spoke in private, as I have, but I don't see any problem with that. Well, you almost seem to indicate, though, he took into consideration that three counts were dismissed. Is that a problem? You can do that. You can? That's news to me. Simons has several opinions. You can consider a dismissed charge. Not dismissed to make that the wrong, but dismissed as part of the slavery. You can consider that. I don't think the judge necessarily did that. It doesn't say that in the record. Well, I wasn't aware of that. So even though the state dismisses them, there's still factors and aggravation? Well, I remember years ago, the checks. You write 100 checks, and you keep killing the law. I'm going to try for a consent of the hundreds of cases that were dismissed as part of your character as a defendant, that you would like to do with this litigation. I want to, one time, come back to this PSI. I understand you haven't seen it. Do you need it? What? Do you need it?  No, I'm asking, do you need it in order to bolster the argument you're making today? Or are you comfortable with the argument you're making in spite of the fact you haven't seen it? That's what I'm asking you. Not necessarily. What is so outrageous and egregious in this report that they go on for hearing after hearing after hearing? I don't know what it is. What's in there? I know the letters the defendant sent. Apparently, he was recommended for probation, and somebody else put some information in there, and they said no. I've never seen it. Okay. Got it. I hope I haven't offended anybody here. I'm trying to be as honest as I can. Not at all from my perspective. Thank you. Thank you, Mr. Mabry. Mr. Fanning. Thank you, Mr. Chairman. Just briefly, in reference to the pre-sentence investigative report, it was part of the record. It was in the sealed nature. Originally, when this case came up on the initial or first appeal, actually, I did file a motion to unseal that, so that I could verify and review that to make sure that the pre-sentence investigative report was in its entirety part of the record. And I received a court order from the appellate court allowing that to be unsealed and reviewed by me. So the government could have filed a motion to unseal that record and have it available for them to see. So it is part of the record, and I think CD-42 is listed in the court. And I cite that when I reference that. So there is a procedure that can become unsealed. You file a proper motion, and the appellate court issues an order allowing that to be unsealed for whoever the appellate is. So your position is once it's unsealed, you don't have the obligation to forward it on to SAP or to the state, except for them to file their own motion to get it unsealed so they can look at the PSI? I mean, they can, but that was in the original appeal that was remanded back to the court the first time. So I did not do it this time. I get it. Because I didn't need it, I already had it. And I, the first time, was just wanting to make sure it was a part of the record. Well, you kind of did need it, because a heck of a lot of your argument was based on what happened in the, what was done in the PSI. So you have to cite to the record in order to support what you're asserting is fact. And you didn't have any citations to the PSI in your brief, right? No, I do. Well, how could you if you didn't have it open, unsealed? I didn't see any citations to the PSI in your brief. Are you saying that they're there? I think it's C-32. Well, I mean, yeah, you cite it as to what is, it's listed on the inventory, but do you actually cite the pages of the PSI when you make reference to these outrageous things that you said were in there? Right. Because they're not, you know, when they take the document, the clerk only assigned her own individual numbers to them, court record 10, court record 220. She didn't assign them, she didn't break that open and then assign that a record. So I could only refer to it from the C-42 under page 5 or page 2 of the record container that they're in. So there's no court record to reference other than the document as a whole, because it was submitted to them in the sealed nature. Now, the other aspects going back as far as the court's consideration of all the factors. Sure, we believe in the motion reconsidering tries to clean up the record in that respect and try to argue that there are other factors that you consider there. But from this original sentencing agreement, it is our position that he went straight to the maximum. It was based upon the defensive nature that he believed of the offense itself. And that's why we believe that there should be an appropriate sentence, but we think it needs a full weight of consideration of all of the sentencing guidelines but must be free of any bias that the judge is predisposed to. And we think the record is kind of easy. Thank you. Thank you, Mr. Fanning. Thank you, gentlemen. We'll take this matter under advisement. We'll be in recess for a few minutes.